UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dianna Bass,                                            Civil No. 16-4198 (FLN)

        Plaintiff,

v.                                                      **ORDER**

Nancy Berryhill,
Acting Commissioner of Social Security,

        Defendant.

___

Edward Olson and Karl Osterhout, for Plaintiff.
Ann Bildtsen, Assistant United States Attorney, for Defendant.

___

Plaintiff Dianna Bass seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XIV of the Social Security Act. This Court has jurisdiction over Plaintiff's claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross motions for summary judgement. *See* ECF Nos. 12 and 15. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

# I. INTRODUCTION[1]

**A. Background**

On October 28, 2000, Bass fell from a ladder while cleaning gutters. Administrative Record [hereinafter "AR"] 851, ECF No. 11. This case stems from the multiple head injuries Bass sustained attendant to that accident, and her subsequent challenges in securing and maintaining competitive employment in light of those injuries. *See generally* ECF No. 1.

On November 22, 2013, Bass applied for DIB and SSI. AR 10. Bass alleges that her disability began on January 1, 2010. *Id.* Bass was fifty-two years-old when she applied for DIB and SSI. AR 24. Bass' applications for DIB and SSI were denied initially on March 17, 2014, and on reconsideration on October 29, 2014. *Id.*; AR 77–90; 142–143.

On November 13, 2015, an administrative hearing was held before Administrative Law Judge ("ALJ") Peter Kimball. AR 32–76. At the hearing, Bass testified and was represented by a claimant advocate, Bart Painter. AR 34. Steve Bosch, a vocational expert ("VE"), and Dr. Mary Stevens, a neutral medical expert, also testified at the hearing. *Id.* On December 11, 2015, the ALJ denied Bass' applications for DIB and SSI, and found that Bass was not disabled. AR 10–26.

On October 19, 2016, the SSA Appeals Council denied Bass' request for review, rendering the ALJ's decision final for purposes of judicial review. AR 1–3; *see* 20 C.F.R. § 404.981. On December 15, 2016, Bass commenced this civil action, seeking an award of benefits, or alternatively, reversal and remand for further proceedings. ECF No. 1 at 2.

---

1   This Court adopts the ALJ's findings regarding Bass' medical treatment history.

**B. The ALJ's Decision**

In determining that Bass was not disabled, the ALJ followed the five-step sequential process established by the SSA. *See* 20 C.F.R. § 404.1520(a)(4).

The first step in the sequential evaluation is to evaluate the claimant's work history to determine if they are engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.15071 and 416.971. If the claimant has performed substantial work activity then they are not disabled. *Id.* At step one, the ALJ found that although Bass had worked part-time, she had not engaged in substantial work activity since her alleged disability onset date. AR 15.

The second step in the sequential evaluation is to determine whether the claimant has a severe, medically-determinable impairment, or combination of impairments, that significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). At step two, the ALJ found that Bass had the following severe impairments: history of a traumatic brain injury secondary to a closed head injury suffered in 2000, cognitive disorder, and persistent depressive disorder with anxiety. AR 15.

The third step in the sequential evaluation requires the ALJ to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d), 404.1525, 404.1526. Here, the ALJ determined Bass does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1. AR 16. The ALJ specifically considered Listings 12.02, 12.04, and 12.06, and Dr. Stevens' testimony in making his step-three determination. AR 16.

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Function Capacity ("RFC").

*See* 20 C.F.R. § 416.920(e). Here, after reviewing the entire record, including the VE's testimony, the ALJ concluded that Bass had the RFC to: "perform a full range of work at all exertional levels[,] but with the following nonexertional limitations: in terms of understanding, remembering, and carrying out instructions, she is able to perform simple, routine tasks; she is able to frequently respond appropriately to supervisions, coworkers, and the public." AR 18. In making this determination, the ALJ found that Bass' medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the ALJ found that Bass' statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. *See* AR 18–19.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either their past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v). If the claimant cannot perform their past relevant work, then the burden shifts to the Commissioner to establish, first, that the claimant has the RFC to perform other kinds of work, and, second, that other work exists in substantial numbers in the national economy. *See Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Bass was not able to perform her past relevant work as either a truck-driver or computer technical support staff. AR 24. This finding was based on the VE's testimony that a hypothetical person with the comparable limitations, age, education, and past work experience could not perform any of Bass' past relevant jobs because the mental demands of those jobs exceeded Bass' RFC. *Id.* At step five, the ALJ concluded that considering Bass' age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Bass can perform: officer helper, hand packager, and bench assembly. AR 25. This

determination was based on the VE's testimony, which the ALJ found consistent with the information contained in the Dictionary of Occupational Titles. *Id.*

## II.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Quals v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means sufficient relevant evidence that a reasonable person might accept as adequate to support a conclusion. *See Richard v. Perales*, 402 U.S. 389, 401 (1971). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). Therefore, this Court's review of the ALJ's factual determinations is deferential, and does not re-weigh the evidence nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th. Cir. 1997); *see also Roe v. Chater*, 92 F.3d 672, 675 (8th. Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

### III.  ANALYSIS

Bass argues that the ALJ erred by "reject[ing] the opinions" of Dr. Stevens, and Bass' treating medical providers, Dr. Kathyrn Lombardo and Leah Holmes, L.P., and failed to provide sufficient reasons for discrediting their opinions. *See* ECF No. 13 at 4. Bass also argues that the ALJ's failure to properly weigh the opinion evidence resulted in an improper RFC. *Id.* The Commissioner argues that the ALJ "properly evaluated the opinion evidence." ECF No. 16 at 5. Because substantial evidence in the record as a whole supports the ALJ's decision to deny Bass' applications for DIB and SSI, this Court affirms. *See* 42 U.S.C. § 405(g).

**A.     The ALJ Properly Weighed the Opinion Evidence**

**1.     Substantial evidence supports the weight assigned to Dr. Lombardo's and Holmes' opinions.**

Dr. Lombardo treated Bass' brain injuries throughout 2014 and 2015. AR 839. On December 2, 2014, Dr. Lombardo opined that Bass would not be able to sustain competitive

6

employment in the foreseeable future, AR 861, and on March 22, 2015, Dr. Lombardo found that Bass would have "moderate to extreme impairment in her ability to perform basic work duties in a normal competitive work environment and would be absent from work more than three days a month." AR 23; AR 844. Although Bass argues that the ALJ "rejected" Dr. Lombardo's opinion, in fact, the ALJ gave "little weight" to Dr. Lombardo's opinion because her findings regarding Bass' impairment severity were inconsistent with the record as a whole. AR 23.

Generally, a "treating physician's opinion is entitled to controlling weight," so long as it is "supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ must "always give good reasons . . . for the weight [attributed to the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Substantial evidence supports the ALJ's conclusion that Dr. Lombardo's opinion was inconsistent with the record as a whole. *See Julin*, 826 F.3d at 1088. Here, the ALJ discounted Dr. Lombardo's opinion because her treatments of Bass were spondaic, and the treatment notes showed that Bass' global assessment of function score never dropped below 55, which the ALJ observed "does not support the severity of the symptoms alleged." AR 23; *see, e.g.*, *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (reasoning that "[a] treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions."). The ALJ also noted that Dr. Lombardo's finding that Bass suffered from moderate to extreme functioning impairment was inconsistent with other medical records showing that Bass' memory was intact, she was alert, and she was conversant and pleasant. AR 869. The ALJ also found that Bass' testimony belied her alleged symptom severity given that she stated that

was able to use a computer, attend college courses, complete her degree, drive a car, care for her apartment, and work part-time at various points after her alleged disability onset date. AR 38–52.

This Court's review of the ALJ's factual determinations is deferential and it neither reweighs the evidence, reviews the factual record *de novo*, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker*, 459 F.3d at 936. Here, the ALJ sufficiently explained why he assigned little weight to Dr. Lombardo's opinion, and articulated how Dr. Lombardo's opinion was inconsistent with the record as a whole. *See Julin*, 826 F.3d at 1088. Accordingly, this Court will not disturb the weight assigned to Dr. Lombardo's opinion.

Like Dr. Lombardo, Holmes treated Bass throughout 2014. AR 23. In March 2014, Holmes opined that Bass could not sustain competitive employment because of residual brain trauma and injury, difficultly in multi-taking, sustaining attention and cognitive endurance, and that Bass could not work an eight-hour day without frequent breaks. AR 716. The ALJ gave no weight to Holmes' opinion because it was inconsistent with the record as a whole. AR 23. Specifically, the ALJ noted that Bass had recently secured part-time work editing an online book for a Canadian businessman, completed her degree, and her mental status testing demonstrated a satisfactory ability to learn new material and concentrate. AR 23. In addition, Bass testified that she read up to two hours a night. AR 66. Because the ALJ provided an adequate explanation and offered good reasons for affording no weight to Holmes' opinion, *see* 20 C.F.R. § 404.1527(c)(2), and identified objective medical evidence inconsistent with Holmes' opinion regarding Bass' limitations, *see Julin*, 826 F.3d at 1088, this Court will not disturb the weight assigned to Holmes.

## 2. Substantial evidence supports the weight assigned to Dr. Stevens' opinion.

During her testimony at the November 13, 2015, administrative hearing, neutral medical examiner Dr. Stevens opined that Bass is capable of only simple, routine tasks, and could not sustain the requisite concentration needed for full employment, AR 69, and that over time, Bass' brain injury would worsen. AR 66. Dr. Stevens opined that Bass' injuries satisfied Listings 12.02 and 12.04. *Id.* The ALJ gave Dr. Stevens' opinion no weight "due to [a] lack of evidentiary support." AR 19.

"[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources." *Papesh v. Colvin*, 786 F.3d 1126, 1133 (8th. Cir. 2015). While the opinion of a non-examining physician does not constitute substantial evidence independently, an ALJ may permissibly consider such an opinion as one aspect of a broader record. *See Johnson v. Astrue*, No. 10-cv-4373(DWF/JJG), 2012 WL 1004992, at *8 (D. Minn. Mar. 26, 2012). When deciding the weight to give an opinion, the ALJ considers factors including: (1) the examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See* 20 C.F.R. § 416.927(c).

Here, the ALJ articulated sufficiently good reasons for assigning no weight to Dr. Stevens' opinion. The ALJ identified objective testing showing that Bass' Intelligence Quotient scores were average to above average, her concentration was only mildly impaired, her cognitive functioning was improved, and that her symptoms were being adequately managed. AR 19. The ALJ again noted that since Bass' alleged disability onset, she had attended and finished a college degree program, had secured online employment, and was able to tend to her daily activities. *Id.* The ALJ properly discounted Dr. Stevens' findings because they were inconsistent with the objective medical record and were not supported by Bass' testimony regarding the severity of her

functional limitations. *See, e.g.*, *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ has the authority to weigh conflicting evidence and resolve disagreement in the medical record). Accordingly, the ALJ's decision to assign no weight to Dr. Stevens' opinion will not be disturbed.

The ALJ gave great weight to the opinions of state medical examiners, Dr. Gregory Salmi and Dr. Paul Ossmann that Bass does not suffer from a severe physical impairment. AR 22. An ALJ can assign a state agency consultant's opinion more weight than a treating source if the state agency consultant's opinion is supported by substantial evidence in the record. *See Davis v. Apfel*, 239 F.3d 962, 967–68 (8th 2001). Dr. Salmi noted that Bass does not satisfy Listing 12.02 and 12.04 criteria, AR 83, and that her self-reporting symptom severity was far worse than the objective medical evidence, "likely due to psychosocial or emotional concerns." *Id.* Dr. Salmi also noted that although Bass' concentration and persistence were moderately impacted, her ability to understand, carry out and remember simple instructions, make judgments commensurate with functions of unskilled work, to respond appropriately to brief supervision, and interactions with coworkers were not impaired. AR 100. In addition, Dr. Salmi noted that Bass' memory scores demonstrated average to upper average intelligence, and that testing performed in 2002 showed that she functioned within normal limits. AR 95. Similarly, Dr. Ossmann noted a 2011 Mayo evaluation summary, which showed that Bass' cognition disorder was largely resolved and that her performance across measures were within the average range. AR 116. Dr. Ossmann also stated that the medical evidence of record does not show a worsening of Bass' mental health, *id.*, and that Bass was not significantly impaired to the extent that she satisfied a Listing criteria. AR 116–117. Here, the ALJ's decision to afford Dr. Salmi's and Dr.

Ossmann's opinion great weight is supported by the objective medical record. *See Davis*, 239 F.3d at 968.

**B.     The ALJ Did Not Err in Fashioning Bass' RFC**

It is "the ALJ's responsibility to determine [the claimant's] RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the claimant's] own description of her limitations." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal citations omitted). "[A] claimant's [RFC] is a medical question" that requires "[s]ome medical evidence" in support. *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). Here, in fashioning Bass' RFC, the ALJ opined that Bass' daily activities in the record belied her disability claims, specifically those activities related to daily living, such as completing household chores, driving, taking college courses and completing a degree program, and working-part time. *See* AR 66; *see, e.g.*, *Hensley v. Barnhard*, 352 F.3d 353, 356–57 (8th Cir. 2003) (reasoning that the claimant's allegation of limited mobility was undermined by his admission to providing care for his children and disabled sister).

Here, the record shows that the ALJ's RFC determination included, at minimum, some medical evidence. Dr. Salmi, consistent with the ALJ's RFC, concluded that Bass could not perform her past relevant work, but was nonetheless not disabled because she suffered from only moderate limitations in adaptive functioning. AR 89–90, AR 100, AR 103. Similarly, Dr. Ossmann found that although Bass could not perform her past relevant work, AR 122, she was not disabled and was not significantly limited in concentration and persistence, carrying out detailed instructions, sustaining an ordinary routine without supervision, and the ability to make simple-work related decisions. AR 118. Indeed, the ALJ stated that he considered the "entire record" in fashioning Bass' RFC. AR 18. Although the ALJ must not "succumb to the temptation

to play doctor and make their own medical findings," *Pate-Fires v. Asutre*, 564 F.3d 935, 947 (8th Cir. 2009), in this case, Bass does not argue that the ALJ went beyond the presented evidence to make independent factual findings. Again, this Court's review of the ALJ's factual determination is deferential, and it neither re-weighs the evidence, reviews the factual court de novo, *see Flynn*, 107 F.3d at 620, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker*, 459 F.3d at 936. Because the ALJ's RFC determination relied on a sufficient examination of the record, the Court concludes that substantial evidence exists to support the ALJ's RFC determination. *See id.*

## IV.  CONCLUSION AND ORDER

If the ALJ's decision is supported by substantial evidence in the record, this Court cannot reverse simply because "substantial evidence . . . would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig*, 212 F.3d at 436). Here, substantial evidence supports the ALJ's findings and ultimate determination that Bass is not disabled.

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgement (ECF No. 12) is **DENIED**;

2. Defendant's motion for summary judgement (ECF No. 15) is **GRANTED**;

3. The Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE.**

**LET JUDGEMENT BE ENTERED ACCORDINGLY**.


DATED: March 28, 2018                              *s/Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge